UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOHAMMAD HASAN HUSSAINI,

Petitioner,

v.

LAURA HERMOSILLO, et al.,

Respondents.

Case No. 2:26-cv-01618-TLF

ORDER GRANTING PETITION
FOR HABEAS CORPUS

Petitioner, Mohammad Hasan Hussaini, is a native and citizen of Afghanistan. He is detained by U.S. Immigrations and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkts. 10, 16. The parties agree that petitioner has been granted asylum by an Immigration Judge on August 27, 2025, and the government has appealed. Dkt. 10 at 1-4; Dkt. 16 at 11.

Petitioner filed this federal habeas corpus petition under 28 U.S.C. § 2241, challenging the post-deprivation hearing ordered by this Court. Dkts. 1, 2, 10; *Hussaini v. Hermosillo*, No. 2:26-cv-00485-TLF, 2026 WL 947933, at *5 (W.D. Wash. Apr. 8, 2026). Petitioner argues the immigration judge ("IJ") at this hearing violated the due process protections ordered by this Court and abused her discretion when determining he was a flight risk. Dkt. 10. Petitioner asks for an order granting habeas corpus, to be released on the conditions previously in place or, on less restrictive conditions. Dkt. 10.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 1

Respondents argue petitioner is not entitled to release, because the IJ relied on evidence that he did not comply with an in-person check-in during his release. Dkt. 16. The government argues petitioner's failure to present himself in person for a check-in was a violation of release conditions, so DHS properly considered petitioner to be an absconder. Dkt. 16. As the IJ had considered this evidence to be sufficient to show risk of flight, the government contends the IJ complied with the Court's habeas corpus order. Dkt. 16. The government also argues petitioner failed to exhaust available administrative remedies, and this Court does not have jurisdiction to review the IJ's decision. Dkt. 16.

The parties unanimously consent to the jurisdiction of a Magistrate Judge. Dkt. 22. For the reasons below, the Court **GRANTS** the petition and **ORDERS** respondents to release petitioner within **24 hours** of the filing of this Order.

**BACKGROUND**

**A. Prior Proceedings**

The facts related to petitioner's re-detention were summarized by this Court's April 2026 Order. *Hussaini*, 2026 WL 947933, at *1-*2.

Petitioner entered the United States in 2023 and was conditionally released. *Id.* at *1. In May 2025, petitioner was re-detained by respondents. *Id.*

Respondents' I-213 form asserted petitioner was a "'Known Suspected Terrorist'" ("KST"), and that on "'March 29, 2024, [petitioner] failed to report in person as instructed," meaning petitioner was designated "'as an active absconder.'" *Id.*

Thereafter, an IJ granted petitioner's asylum claim, which respondents appealed to the Board of Immigration Appeals ("BIA"). *Id.* at *2.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 2

In January 2026, petitioner filed a federal habeas petition challenging his re-detention on due process grounds under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Hussaini*, 2026 WL 947933, at *2. Respondents urged this Court to deny the petition, primarily based on petitioner's alleged KST status, as well as petitioner's alleged failure to report in March 2024. *Id.* at *2-*4.

This Court granted the petition in part, ordering a post-deprivation hearing. *Id.* at *3-*5 (citing *Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 WL 696806 at *5 (W.D. Wash. Mar. 12, 2026)). This Court ordered the hearing must be conducted by an IJ, "in line with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), where respondents will bear the burden of proving by clear and convincing evidence that petitioner is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks." *Id.* at *5.

**B. The Post-Deprivation Hearing**

On April 15, 2026, petitioner attended a post-deprivation hearing before an IJ. Dkts. 3 (Exhibit B, audio recording), 17 (Deportation Officer ("DO") Declaration), 18 (Exhibit 6, audio recording).[1] The IJ first heard argument from respondents' counsel, who asserted petitioner was a flight risk based on petitioner's alleged failure to report in March 2024. Dkt 3 at 04:40 through 07:35.

The IJ then heard argument from petitioner's counsel, Dkt. 3 at 07:40 through 17:35, who asserted evidence, *see* Dkt. 3-1 (Petitioner's "Evidence Packet"), which included, but was not limited to:

---

[1] The parties each submitted audio-only recordings of the post-deprivation hearing. Dkts. 3 and 18. For simplicity, the Court cites only to Dkt. 3 as both audio recordings are substantively identical.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 3

- Petitioner's declaration in which he asserted, among other matters, the effect of his re-detention on his two children, as well as his health conditions which have left him wheelchair bound. *E.g.* Dkt. 3-1 at 10-11.

- A support letter from petitioner's sister, who lives in Virginia. Dkt. 3-1 at 16. His sister explains she had been granted asylum, is caring for petitioner's two children, and that she will provide petitioner with stable housing, financial support, and ensure he will comply with all conditions of his release and immigration proceedings. Dkt. 3-1 at 16-17.

- Petitioner's records, including an employment authorization card, a DHS "Departure Record" demonstrating he had been granted asylum, and proof of income. Dkt. 3-1 at 20-24.

- Additional support letters from community members in Virginia, including petitioner's church pastor, attesting to petitioner's character, his family ties, his community ties, and their own commitment to supporting petitioner and his family financially and in supporting petitioner's compliance with his immigration proceedings. Dkt. 3-1 at 26, 29, 32, 35, 38.

The IJ, after hearing both sides' arguments, asked respondents' counsel about petitioner's alleged KST status. Dkt. 3 at 17:35 through 18:50. Respondents' counsel stated, "the Department is aware of that circumstance" and "other law enforcement departments made DHS aware of that." Dkt. 3 at 18:50 through 19:25. However, while "those agencies have been kept abreast of [petitioner]'s status," the "other agencies involved have chosen not to take action further on that notice . . ." Dkt. 3 at 19:25 through 20:05.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 4

The IJ then asked respondents' counsel "did the government submit any evidence in the bond hearing?" Dkt. 3 at 20:15 through 20:25. Respondents' counsel answered, "I believe we did . . . if we didn't I apologize, I meant to submit the I-213 and it doesn't look like I did." Dkt. 3 at 20:25 through 20:40; *see also* Dkt. 3-4 ("DHS Notice of Evidence" listing only a "Form I-213"). Respondents' counsel then requested leave to submit the I-213 form. Dkt. 3 at 20:40 through 20:55. The IJ permitted respondents' counsel to submit the I-213 form. Dkt. 3 at 24:55 through 25:20; 30:10 through 31:15. Petitioner's counsel argued "the burden is on the government today" to which the IJ responded "I don't need you to tell me who has the burden now." Dkt. 3 at 25:20 through 25:35.

The I-213 form asserts "[o]n March 29, 2024, [petitioner] failed to report in person as instructed. (SBD) ATD placed [petitioner] as an active absconder." Dkt. 3-4 at 6. The I-213 form otherwise does not include any asserted facts about petitioner's alleged failure to appear. The I-213 form states that petitioner's May 6, 2025, re-detention was "pursuant to a Warrant of Arrest with [ICE] as a National Security Interest Case – Known or Suspected terrorist (KST)." Dkt. 3-4 at 5.

The IJ denied bond. Dkt. 3 at 32:55 through 35:15. The IJ found there was insufficient evidence to find petitioner was a danger to the community,[2] but found

---

[2] Respondents do not substantively assert or discuss petitioner's alleged KST status. *See* Dkt. 16.

This Court has rejected reliance on similar national security allegations when they were previously rejected by an IJ. *Mohammadi v. Bondi*, No. C26-420-MLP, 2026 WL 607767, at *6-*7 (W.D. Wash. Mar. 4, 2026) (rejecting reliance on "DHS's suspicion that Petitioner is an ISIS operative" when an "IJ who presided over Petitioner's hearing on her application for asylum concluded the government's evidence of Petitioner's potential involvement in terrorist activity was entitled to 'no more than minimal weight' and was not sufficient to preclude a grant of asylum."). Thus, even if respondents were to assert petitioner's alleged KST status, they did not make a record of any facts to support it, it was not relied upon by the IJ, and on this record it would not give the Court a reason to deny habeas corpus.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 5

petitioner was a flight risk based on his "failures to comply, whether he agrees or disagrees . . ." Dkt. 3 at 32:55 through 35:15; Dkt. 18-1 (IJ's form/check-box order, issued April 15, 2026); Dkts. 3-3, 18-2, 18-3 (IJ's subsequent written order and amended order, issued May 4, 2026, reiterating these findings).

## DISCUSSION

### A. Jurisdiction

"The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e); *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) ("In other words, custody determinations within the discretion of the Attorney General are not subject to judicial review.").

"That provision does not, however, preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez*, 872 F.3d at 987 (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). "'[C]laims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" *Id.* (quoting *Singh*, 638 F.3d at 1202, *abrogated on other grounds as stated in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210-11 (9th Cir. 2022)).

Petitioner is not "challenging the IJ's discretionary judgment, but is instead challenging 'whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled.'" *Soriano v. Hernandez*, ---

ORDER GRANTING PETITION FOR HABEAS CORPUS - 6

F. Supp. 3d ----, 2026 WL 969764, at *3 (W.D. Wash. 2026) (quoting *W.T.M.* v. *Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026)).

As the petition presents a question of law – whether due process was provided at his post-deprivation hearing – the Court has subject matter jurisdiction over petitioner's constitutional claims. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

## B. Exhaustion

### i.      Standard

Respondents first argue petitioner must be required to exhaust administrative remedies by pursuing a BIA appeal. *E.g.* Dkt. 16 at 5-6.

"In the immigration habeas context, administrative exhaustion is prudential, not jurisdictional." *Vasquez Lopez v. Hernandez*, --- F. Supp. 3d ----, 2026 WL 984151, at *2 (W.D. Wash. 2026).

"Prudential exhaustion is ordinarily required when (i) agency expertise necessitates agency consideration to generate a proper record and decision, (ii) excusing a party from exhausting administrative remedies would encourage the 'deliberate bypass' of the administrative scheme; and (iii) administrative exhaustion would likely allow the agency to correct its own mistakes and alleviate the need for judicial review." *Id.* (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be

void.'" *Hernandez*, 872 F.3d at 988 (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

**ii.    Application**

The first *Puga* factor weighs against requiring prudential exhaustion. "[T]he facts in this case are undisputed and the actual issue is whether, as a matter of law, the undisputed evidence presented at the bond hearing could establish that Petitioner posed a flight risk." *Soriano*, 2026 WL 969764, at *3. "Thus, the BIA's 'expertise' in immigration bond decisions is unnecessary to generate a proper record or reach a proper decision." *Id.*

The second *Puga* factor is neutral on whether to require prudential exhaustion. "Although relaxation of prudential exhaustion could encourage . . . others to bypass the administrative appellate procedure . . . there also is some value in identifying specific circumstances under which, as a matter of law, a finding of flight risk is untenable." *Id.* at *4. Stated otherwise, "it would be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Id.*

The third *Puga* factor weighs against requiring prudential exhaustion. "Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Id.* "Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim." *Id.*

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 8

Even if the above *Puga* factors favored requiring exhaustion, the Court finds waiver would be appropriate under *Laing*. "Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'" *Scott v. Wamsley*, No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019); *Soriano*, 2026 WL 969764 at *4.

Petitioner has been detained for over a year, since May 2025, and his pending BIA appeal may yet take many months to resolve. Petitioner also presented individualized evidence related to his community and family ties in Virginia, the effect of his detention on his family and the deterioration of his health, situations respondents do not substantively dispute. Dkts. 3-1, 4, 16. This evidence supports finding that his continued detention, pending further immigration court proceedings, would create a risk of irreparable harm. *W.T.M.*, 2026 WL 262583, at *3 (citing *Hernandez*, 872 F.3d at 995) ("while not an independent basis for relief, supports a finding that his continued detention pending a potentially months-long BIA appeal of the IJ's bond denial decision would risk continued irreparable harm.").

Petitioner also "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile." *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) (citing *Matter of Cruz de Ortiz*, 25

ORDER GRANTING PETITION FOR HABEAS CORPUS - 9

I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer.")).

The Court thus holds petitioner is not required to exhaust his administrative remedies before pursuing the present habeas corpus petition.

**C. Merits**

Petitioner argues the IJ abused her discretion when finding he was a flight risk and that his post-deprivation hearing violated due process. Dkt. 10. The respondents argue the IJ considered evidence that petitioner failed to report for a check-in when he was on supervision in March 2024, and this was sufficient to show risk of flight; the government contends the IJ complied with the Court's habeas corpus order. Dkt. 16.

**i.      Standard**

Immigration detention is civil, not criminal, and it "is permissible only to prevent flight or reduce the risk of danger to the community." *Meneses v. Santacruz,* 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) (citing *Zadvydas v. Davis,* 533 U.S. 678, 690-691 (2001)).

"When questions require a close review of agency-found facts, like the "'dangerousness'" or flight risk "determination, we review for an abuse of discretion." *Martinez*, 124 F.4th at 784; *Vasquez Lopez*, 2026 WL 984151, at *2 (clarifying *Martinez* also applies to flight risk determinations).

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019*).* "First, a challenge may be based on the contention that the decisionmaker erred

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 10

because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* "Second, it may be clear from the adjudicator's opinion itself that [they] simply did not apply the correct standard to the facts." *Id.*

Here, the government had the burden of establishing petitioner was a danger to the community or a flight risk by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203-1207 (9th Cir. 2011) (government must show risk of flight or dangerousness by clear and convincing evidence in bond hearing conducted by an immigration judge, pending a Ninth Circuit stay of an order of removal), abrogated in part, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–1201 (9th Cir. 2022); *see also, Black v. Decker,* 103 F.4th 133, 155-156 (2d Cir. 2024) (government must bear the burden of proof by clear and convincing evidence on risk of flight, or dangerousness, to justify petitioner's continued detention under Section 1226(c)); *German Santos v. Warden Pike County Correctional Facility,* 965 F.3d 203, 213 (3d Cir. 2020) (government bears the burden of proof by clear and convincing evidence as to risk of flight and risk of dangerousness, in bond hearing held before an IJ where petitioner is detained under Section 1226(c)).

Circuit courts have come to different conclusions in various situations.  *See, Rodriguez Diaz*, 53 F.4th at 1198–1201 (holding, regarding a second bond hearing under 8 U.S.C. § 1226(a) using the *Mathews* factors in a challenge to continuing detention, that due process did not require the burden of proof to be allocated to the government by clear and convincing evidence; neither the burden of proof in the first hearing, nor the burden of proof in the second hearing (the second hearing was being challenged on habeas corpus) caused a due process violation on those specific facts);

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 11

*Miranda v. Garland,* 34 F.4th 338, 362-366 (4th Cir. 2022) (reversing a district court's decision to grant habeas corpus in the immigration context, and finding the clear and convincing evidence standard should not apply to the IJ's decision whether to grant bond); *Hernandez-Lara v. Lyons,* 10 F.4th 19, 35-46 (1st Cir. 2021) (government must prove dangerousness by clear and convincing evidence, and must prove flight risk by a preponderance of the evidence).

In *Charan S. v. Warden of the California City Det. Facility*, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158, at *5 n.7 (E.D. Cal. Apr. 28, 2026), Chief Judge Nunley observed that the Ninth Circuit precedent is somewhat unclear. *See Rodriguez Diaz*, 53 F.4th 1189, 1198–1201 (9th Cir. 2022). In *Jennings v. Rodriguez*, 583 U.S. 281, 296–301, 311–13 (2018), the Supreme Court held the Ninth Circuit's interpretations of 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) were not plausible. The Court determined the periodic bond hearings requirements imposed by the Ninth Circuit lacked "any arguable statutory foundation" and the canon of constitutional avoidance was inapposite because it "comes into play only when, after application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Rodriguez Diaz*, 53 F.4th at 1200 (internal citations omitted).

Yet the due process issue was not resolved, because *Jennings* did not decide whether immigration detention was unconstitutional if the government did not provide "the procedural requirements [the Ninth Circuit] read into the statute, and instead remanded for consideration of constitutional question in the first instance." *Id*. The Ninth Circuit left the door open for petitioners to make as-applied due process challenges to their detention under immigration statutes. *Id.* 1213-1214; see also *Id.* at 1228

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 12

(Wardlaw, J. dissenting) ("The proper balancing of the *Mathews* factors is unsettled in our circuit").

Although the law in the Ninth Circuit is somewhat uncertain, district courts in the Ninth Circuit have repeatedly held the clear and convincing evidence standard should apply in the context of immigration detention hearings. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

The U.S. Supreme Court has "mandated an intermediate standard of proof – 'clear and convincing evidence'- when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 282 (1990) (quoting, *Santosky v. Kramer,* 455 U.S. 745, 756 (1982)).

The clear and convincing evidence standard has been described as evidence that produces "a firm belief or conviction as to the truth of the allegations" in the mind of the factfinder, and evidence "so clear, direct and weighty and convincing" that it allows the finder of fact "to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan,* 497 U.S. at 285 n. 11. It has also been described as evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the proponent's] factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984) (citation omitted). The clear and convincing evidence standard is satisfied if "the material [the proponent] offered instantly tilted the evidentiary scales in [its favor] when weighed against the evidence [the opposing party] offered in

opposition." *Id.* at 316 (citation omitted).

An "IJ's mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear . . . that the IJ did not actually apply the standard in [their] reasoning and decision." *Ramos-Portillo v. McAleenan*, No. 18-cv-0260-MWF-SS, 2019 WL 3246499, at *1 (C.D. Cal. July 19, 2019). "It is the application of the clear-and-convincing standard, not its recitation, that matters." *Id.*; *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

"When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Martinez*, 124 F.4th at 783). The factors the IJ "may" consider "include any or all of the following;"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).[3]

---

[3] The BIA directs an IJ "may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond" based on the rationale that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings. *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA. 2020).

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 14

ii.    **Application**

The only evidence submitted by respondents at the post-deprivation hearing was an I-213 form. And the I-213 form was asserted only to show petitioner's alleged failure to report in March 2024. Dkt. 3-4.

The I-213 form provides, in relevant part: "On March 29, 2024, [petitioner] failed to report in person as instructed. (SBD) ATD placed [petitioner] as an active absconder." Dkt. 3-4 at 6. The I-213 form does not refer to corroborating evidence.

Even setting aside that the respondents did not offer the I-213 into evidence until prompted to do so by the IJ, this form contains conclusory information and therefore is not reliable evidence. Courts have disapproved of similar conclusory assertions in I-213 forms or other documents created by the government itself. *See*, *e.g.*, *Henao v. Hernandez*, No. 2:26-cv-00707-LK, 2026 WL 1492714, at *6 (W.D. Wash. May 28, 2026) (holding an I-213 form "which contained information input by an unknown person in an unknown (but deficient) manner, drawn from an unidentified database that culled information from an unknown source—which cited only unspecified 'violations' cannot serve as clear and convincing evidence for a finding of flight risk."); *see also Vasquez Lopez*, 2026 WL 984151, at *1 (rejecting reliance on a deportation officer's statement in the I-213 that petitioner failed to cooperate at the time of arrest as "[n]o details have been provided to support [their] conclusory statement.").

As for whether this evidence could meet the standard of clear and convincing, "the I-213 form is supposed to be a record of a conversation with [a noncitizen]" and

---

But the fact of a removal order is not sufficient by itself to deny bond. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011).

ORDER GRANTING PETITION FOR HABEAS CORPUS - 15

courts may evaluate the probative value of information in the I-213 form by considering whether the information is accurate, and by considering whether the information was obtained from the noncitizen or from someone else. *España v. Nessinger*, No. 26-cv-014-JJM-PAS, 2026 WL 821788, at *11 (D.R.I. Mar. 25, 2026) (quoting *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088 (7th Cir. 1994). Even BIA precedent provides that an I-213 form "loses trustworthiness if the information contained within it was obtained by someone other than the noncitizen who is the subject of the form," among other potential issues. *Id.* at *11-*12 (disapproving of reliance on "critical information not obtained from [petitioner] himself" in the absence of "evidence to substantiate this allegation . . .").

The IJ mentioned petitioner's evidence (Dkt. 8-3 at 4) but not address or reference the factors discussed in *Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). *See Vasquez Lopez*, 2026 WL 984151, at *3 ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion."); *see also Bayani*, No. 26-cv-0266-JES-VET, 2026 WL 1270059, at *7 (S.D. Cal. May 8, 2026) ("While the Court does not decide in this case whether and how due process requires IJs to consider mitigating factors and alternatives to detention, the IJ's lack of consideration of either weighs in favor of a finding that she failed to hold the government to its burden.").

Petitioner's evidence, as recounted above, reflected that he has a sister who, although not a United States Citizen has been granted asylum, and has a stable place to live at which she cares for petitioner's two children. Dkt. 3-1 at 16-17. Petitioner also

presented evidence his sister, his pastor, and other community members attest they will provide him financial and other means of support, including ensuring compliance with his immigration proceedings. Dkt. 3-1 at 16-39. And, petitioner presented unrebutted evidence on his deteriorating health, stating he had a stroke while being detained, he has a serious back condition for which surgery is required, he has been hospitalized during the time he has been at the ICE detention center in Tacoma, and he was required to use a wheelchair. Dkt. 3-1 at 10-12, 71-72.

The evidence considered by the IJ does not, as a matter of law, meet the clear and convincing evidence standard. The I-213 form, with conclusory information about failing to attend an in-person check-in, does not support "a firm belief or conviction as to the truth of the allegations" in the mind of the factfinder, and evidence "so clear, direct and weighty and convincing" that it allows the finder of fact "to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan,* at 285 n. 11. The clear and convincing standard has also been described as evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the proponent's] factual contentions are 'highly probable.'" *Colorado,* 467 U.S. at 316 (citation omitted). The clear and convincing evidence standard is satisfied if "the material [the proponent] offered instantly tilted the evidentiary scales in [its favor] when weighed against the evidence [the opposing party] offered in opposition." *Id.* at 316 (citation omitted). Under this standard, the conclusory remarks in the I-213 form, which was supposed to contain specific information acquired from the petitioner but instead is devoid of facts about the alleged failure to appear, is not clear and convincing. And, the IJ failed to address or reference the factors discussed in *Martinez*.

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 17

Thus, the Court finds an abuse of discretion, and the hearing violated petitioner's right to procedural due process, when the IJ denied petitioner's bond at the post-deprivation hearing.

The Court finds an abuse of discretion because respondents' evidence was insufficient as a matter of law to support the conclusion that petitioner was a flight risk, under the clear and convincing standard, and the IJ failed to address the factors as discussed in *Martinez*, 124 F.4th at 783. *See Tavurov v. Noem*, No. 2:26-cv-00668-TLF, 2026 WL 1283513, at *8 (W.D. Wash. May 11, 2026). The IJ denied bond even though respondents' "evidence itself could not—as a matter of law—have supported [the IJ's] conclusion." *Hechavarria*, 358 F. Supp. 3d at 240.

**D.  Remedy**

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005); *Soriano*, 2026 WL 969764, at *6. Under the circumstances, the Court finds no basis for petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy. *Soriano*, 2026 WL 969764, at *6 (*citing W.T.M.*, 2026 WL 262583, at *5; *Garcia v. Hyde*, 817 F. Supp. 3d 112, 131, (D.R.I. Dec. 3, 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]")).

<strong>CONCLUSION</strong>

For the reasons above, the Court **GRANTS** the petition for a writ of habeas corpus and **ORDERS:**

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 18

1) Respondents shall release petitioner from immigration custody, on the conditions in place prior to his arrest, unless respondents choose to place him on less restrictive conditions, within **24 hours** of the filing of this Order.

2) Respondents shall file a certification with this Court confirming that petitioner has been released from custody within **48 hours** of the filing of this Order.

3) The Court will consider an appropriate post-judgment motion for attorney's fees.

Dated this 16th day of June, 2026.

_Theresa L. Fricke_

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR HABEAS
CORPUS - 19